UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAMILYA WILLIAMS,

Plaintiff,

v.

UNIVERSITY OF MICHIGAN, ET AL.,

Defendants.

_____/

Case No. 22-cv-10296

U.S. District Court Judge
Gershwin A. Drain

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO PARTIALLY DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (ECF No. 6) AND SETTING DATES

### I.   INTRODUCTION

On February 13, 2022, Plaintiff Shamilya Williams initiated the instant employment discrimination action against Defendants the University of Michigan (Plaintiff's former employer; the "University") and U-M Work Connections (an integrated disability management program operated by the University of Michigan; "Work Connections") (collectively referred to as "UM").  ECF No. 1.  On April 6, 2022, she filed a First Amended Complaint to add as Defendants Jennifer Barnett (Plaintiff's former supervisor), Christine Fergus (a Work Connections employee),

1

Jerri Atkins (HR staff at the University of Michigan), Amy Grier (a Senior HR representative at the University), and Mary S. Coleman (President of the University) (collectively referred to as the "Individual Defendants").   ECF No. 2.   Plaintiff alleges that she, an African American woman over the age of 40, "was wrongfully terminated from her employment as a result of her mental health disabilities, race, color, marital status and taking leave resulting from ailments qualifying her for [the Family and Medical Leave Act of 1993]."   *Id.* at PageID.11.

Presently before the Court is the Defendants' Motion to Partially Dismiss Plaintiff's First Amended Complaint.   ECF No. 6.   The Motion is fully briefed, and the Court held a hearing on the matter on October 31, 2022.   For the following reasons, the Court will **GRANT IN PART AND DENY IN PART** Defendants' Motion to Partially Dismiss Plaintiff's First Amended Complaint (ECF No 6). Specifically, the Court will dismiss Counts I, III, IV, V, and VI in their entirety and dismiss Count II with respect to Defendants Grier and Coleman.   Plaintiff's ELCRA claim (Count II) against Defendants University of Michigan, U-M Work Connections, Barnett, Fergus, and Atkins remains.

2

## II.   BACKGROUND

### A. Factual Background

Ms. Williams was first hired by the University of Michigan in 2004.  ECF No. 2, PageID.12.  She had a full-time position as an Office Assistant III.  *Id*.  In August 2015, Ms. Williams was promoted to Executive Secretary within the Department of Psychology.  *Id*.  Her role involved supporting the Department Chair, Patricia Reuter-Lorenz, and the Chief Administrator, Jennifer Barnett.  *Id*.  Over the course of her seventeen years of employment at the University, Ms. Williams did not receive any negative performance evaluations.  *Id*. at PageID.13.  Additionally, she only utilized three leaves of absence for a medical operation, maternity leave, and the mental health leave that gave rise to the instant case.  *Id*.

Ms. Williams felt that Ms. Barnett treated her differently from other employees from the time she started as an Executive Secretary with the Psychology Department.  *Id*.  For example, in December 2015, Ms. Williams emailed Ms. Barnett to request time off during the following February to handle a family matter.  *Id*.  Ms. Barnett responded that they would discuss the request during a one-on-one meeting, which was not the normal University practice.  *Id*.  During the meeting, Ms. Barnett told Ms. Williams her email sounded like she was telling Ms. Barnett she would be taking time off instead of asking for it.  *Id*.  Ms. Williams felt "small"

3

after this interaction and like she could not speak with Ms. Barnett about planning for time off. *Id*. Ms. Williams compared her experience to that of a non-African American coworker, Lisa Boehr, who stated that she had asked for time off with much less lead time without issue. *Id*.

Ms. Williams alleges that she has "experienced similar micro-aggressions, cultural insensitivities, and disparate treatment" from Ms. Barnett since the December 2015 leave request. *Id*. For example, in 2018, Ms. Williams informed Ms. Barnett that her mother, whom Ms. Williams cared for, was terminally ill. *Id*. After her mother passed away in October 2018, Ms. Williams requested bereavement leave, but Ms. Barnett encouraged her to take less time than requested. *Id*. Ms. Williams is unaware of any other employee in her department being told to take less bereavement leave than requested. *Id*.

Ms. Williams claims she "endured years of disparate and hostile treatment" until "she was pushed to the point of mental breakdown." *Id*. As such, in 2019, Ms. Williams began monthly counseling sessions with the University of Michigan Faculty and Staff Student Counseling Office. *Id*. However, Ms. Williams' therapist discontinued sessions with her in June 2020 because she believed a conflict of interest had arisen and Ms. Williams needed more regular and intensive treatment.

4

*Id.* at PageID.14.  Ms. Williams then started weekly therapy with Tracey Newbern, LMSW. *Id.*

In March of 2020, the University of Michigan, like most of the rest of the world, began to shelter in place in response to the COVID-19 Pandemic. *Id.* Ms. Williams alleges that, because the University failed to properly execute a work-from-home policy, Ms. Barnett disguised her increased discrimination and hostility towards Ms. Williams as managerial oversight. *Id.* For example, Ms. Barnett required Ms. Williams to have weekly one-on-one meetings with her as a condition precedent to working from home, even though Ms. Williams white coworkers only had to participate in biweekly meetings. *Id.* at PageID.18.  Ms. Barnett also required Ms. Williams to submit her work schedule for pre-approval but did not make any other employee do so until Ms. Williams complained of disparate treatment. *Id.* Finally, Ms. Barnett would not permit Ms. Williams to use her COVID-19 leave while she adjusted to handling her child's remote schooling and underlying medical condition, even though other employees were not similarly restricted. *Id.*, *id.* at PageID.14.  She went so far as to threaten to fire Ms. Williams if she did not "figure out and get childcare." *Id.* at PageID.18.  Ms. Barnett then made a public statement about remote work, use of COVID-19 leave, and timeliness of assignments that Ms. Williams thought was directed at her. *Id.* at PageID.14.

5

On July 12, 2020, Ms. Williams contacted Marc Sorace, an African American Staff HR contact and Staff Diversity Equity and Inclusion Liaison at the University, about her issues with Ms. Barnett over the years. *Id.* Ms. Williams, the only African American regular staff member who worked under Ms. Barnett, shared that she "felt targeted, isolated, stressed, micromanaged, discriminated against and not afforded the same work flexibilities or treat[ment] as her white co-workers." *Id.* Mr. Sorace took steps to set up a meeting with Ms. Barnett to discuss Ms. Williams' complaints, but Jerri Atkins, a non-African American Staff HR contact with a close relationship with Ms. Barnett, intervened and removed Mr. Sorace from the matter. *Id.*

On September 16, 2020, Ms. Williams' healthcare providers (Tracy Newbern, LMSW; Ernesto F. Figuroa, MD; and Sherrie Tefend, MD) determined she needed to take a leave of absence from work because she had been diagnosed with generalized anxiety disorder and major depression. *Id.* at PageID.15. Ms. Williams provided her medical records and leave request to U-M Work Connections in accordance with the University's employee policy. *Id.* Christine Fergus, the Work Connections Administrator assigned to Ms. Williams' case, retained Calmeze H. Dudley, Jr., MD. and Michigan IME, LLC to conduct an Independent Medical Examination (IME). *Id.* After reviewing the Work Connections file on, and conducting a telehealth examination of, Ms. Williams, Dr. Dudley concluded in an

6

eight-page report that Ms. Williams could immediately return to her full work schedule.  *Id*.  When Ms. Williams asked about the appeal process or the University's policy on the use of IME, Ms. Atkins directed her to the University's Standard Practice Guides (SPG).  *Id*.  However, HR later admitted to Ms. Williams that no policy existed for IME use.  *Id*.  Nonetheless, the University relied on Dr. Dudley's conclusion that Ms. Williams could return to work immediately, despite Ms. Williams' condition deteriorating to the point that she was committed.  *Id.* at PageID.16.  During Ms. Williams' commitment, Ms. Barnett sent her several text messages and emails asking about her return and tasks Ms. Barnett wanted her to complete.  *Id*.

Ms. Williams filed a discrimination claim against Ms. Barnett with the University's Office for Institutional Equity (OIE) on December 14, 2020.  *Id*.  The OIE had not completed its investigation before Ms. Williams was terminated on March 9, 2021.  *Id.* at PageID.16.  Ms. Atkins and Ms. Barnett informed Ms. Williams of her termination via memorandum, indicating that her termination was due to her repeated medically unexcused absences.  ECF No. 2-1, PageID.33.

On March 5,2021, Ms. Williams filed a charge of discrimination with the Michigan Department of Civil Rights.  ECF No. 2, PageID.16.  Ms. Williams only

7

checked the box alleging that she had faced disability discrimination.  ECF No. 2-1,

PageID.29.  She also wrote the following in her summary:

> I began working for the above-named employer on or about April 26, 2004, as a Office Services Assistant. My current position is a Executive Assistant.
>
> Within the last 300 days I have continued to request a reasonable accommodation from my employer due to my disability. I have provided countless medical documentation from my treating physician to corroborate my disability and the restrictions needed. Nevertheless, on or about February 26, 2021, I was threatened by my employer with a disciplinary review which could include possible disciplinary actions, including termination.
>
> I believe I have been harassed, denied a reasonable accommodation, and disciplined due to my disability in violation of the Americans with Disabilities Act of 1990, as amended.

*Id*.  The United States Equal Employment Opportunity Commission (EEOC)

issued Ms. Williams a Right to Sue Letter on November 15, 2021.  *Id.* at

PageID.155.

### B. Procedural Background

Plaintiff brings the following claims: violation of Michigan's Whistleblowers'

Protection Act (WPA) (Count I), hostile work environment in violation of the Elliott-

Larsen Civil Rights Act (ELCRA) (Count II),[1] failure to provide a reasonable

---

[1] Plaintiff also seems to allege a retaliation claim under the ELCRA within Count II.

8

accommodation in violation of the Americans with Disabilities Act (ADA) (Count

III), violation of the self-care and retaliation provisions of the Family and Medical

Leave Act of 1993 (FMLA) (Count IV), race discrimination in violation of Title VII

of the Civil Rights Act of 1964 (Count V), and violation of the Age Discrimination

in Employment Act of 1967 (ADEA) (Count VI).  ECF No. 2, PageID.16-26.

Defendants contend that there are defects with several of Plaintiff's claims.

ECF No. 6.  Specifically, Defendants assert, "the only legally cognizable claims . . .

are ELCRA discrimination, hostile work environment, and retaliation claims against

Defendants Barnett, Fergus, and Atkins (Count II)."  *Id.* at PageID.201.  For the

following reasons, the Court will grant in part and deny in part Defendants' Motion

(ECF No. 6).

### III.   LAW & ANALYSIS

#### A. Legal Standard

Defendants move to partially dismiss Plaintiff's First Amended Complaint on

sovereign immunity grounds as well as for failure to state a claim.  "A motion to

dismiss on the ground that sovereign immunity bars the plaintiff's claims is properly

treated as a motion to dismiss for lack of subject matter jurisdiction under Rule

12(b)(1)."  *Odom v. UM*, No. 16-12791, 2017 WL 2117978, at *2 (E.D. Mich. May

16, 2017); *see also Nair v. Oakland Cty. Cmty. Mental Health Auth.*, 443 F.3d 469,

476 (6th Cir. 2006). Unlike a traditional motion to dismiss for lack of subject-matter jurisdiction, "the entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity." *Id.* at 474.

Federal Rule of Civil Procedure 12(b)(6) allows a district court to assess whether the plaintiff has stated a claim upon which relief may be granted. To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To meet this standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678–80 (applying the plausibility standard articulated in *Twombly*).

When considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and accept all her factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). While

10

courts are required to accept the factual allegations in a complaint as true, the presumption of truth does not apply to a claimant's legal conclusions. *See Iqbal,* 556 U.S. at 678. Therefore, to survive a motion to dismiss, the plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (citations and quotation marks omitted) (quoting *Twombly,* 550 U.S. at 555).

The district court generally reviews only the allegations set forth in the complaint in determining whether to grant a Rule 12(b)(6) motion to dismiss; however, "matters of public record, orders, items appearing in the record of the case, and *exhibits attached to the complaint*, also may be taken into account." *Amini v. Oberlin College*, 259 F. 3d 493, 502 (6th Cir. 2001) (emphasis in original).

### B. Discussion

#### 1. The Court will construe Plaintiff's claims against the Individual Defendants as against them in their personal capacities.

Plaintiff does not expressly identify which of her claims are alleged against which Defendants (apart from Count I, which is alleged against all Defendants) or whether her claims are alleged against the Individual Defendants in their official capacities, personal capacities, or both. *See generally* ECF No. 2. Defendants contend that "[a]ny official capacity claims against [the Individual Defendants]

11

would be pointless and merely duplicative because UM is already (presumably) a defendant in every count."  ECF No. 6, PageID.204 n.2.

The Supreme Court has explained the difference between personal- and official-capacity suits.

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.  As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

*Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citations and quotation marks omitted).  *See also Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017) ("In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself.").

The Court agrees with Defendants.  To the extent Plaintiff seeks to bring all her claims against each Defendant, it would be redundant to bring the claims against the Individual Defendants in their official capacities because the claims are already being brought against Defendants University of Michigan and U-M Work Connections.  Plaintiff argued at the hearing on the Motion that listing the Individual Defendants jobs in the case caption was sufficient to proceed against them in their official capacities.   To the extent that is true, it does not change the Court's

12

determination that the official-capacity suits would be redundant under these circumstances. Accordingly, the Court will construe Plaintiff's allegations against the Individual Defendants as against them in their personal capacities.

### 2. Plaintiff's WPA claim (Count I) is time-barred.

Defendants argue Plaintiff's WPA claim is time-barred as it was filed 341 days after her termination and thus 251 days after the 90-day statutory limitations period expired. ECF No. 6, PageID.210–11. Defendants also contend that even if the Court begins the limitations period when the OIE completed its internal investigation, which Defendants asserts would be improper, Plaintiff did not file her claim until 199 days after the OIE issued its final report on July 29, 2021. *See id.* at PageID.211 n.8. Plaintiff concedes that her claim is untimely. ECF No. 12, PageID.286. Nevertheless, she argues that the limitations period should be tolled due to the COVID-19 Pandemic. *Id.*

Plaintiff provides no legal authority to support her request for equitable tolling. Instead, she argues that "many courts event [*sic*] until today still have restrictive access prohibiting litigants pursue [*sic*] of justice," so the Court "must relax the statutory filing requirements." ECF No. 12, PageID.286. She asserts that this is a case of first impression given the global nature of the Pandemic. *Id.*

13

There is no dispute that the WPA has a 90-day limitations period. MCL 15.363(1) ("A person who alleges a violation of this act may bring a civil action for appropriate injunctive relief, or actual damages, or both within 90 days after the occurrence of the alleged violation of this act."). Nevertheless, "[t]he doctrine of equitable tolling allows courts to toll a statute of limitations when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (quoting *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir.2000)). "Equitable tolling should be applied sparingly and only when exceptional circumstances prevented timely filing through no fault of the plaintiff." *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 947–48 (6th Cir. 2002); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

A plaintiff bears the burden of demonstrating why he or she is entitled to equitably toll the statute of limitations in a particular case. *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir.2004). In the Sixth Circuit, courts consider the following non-exhaustive list of factors to determine whether equitable tolling is appropriate:

> (1) the petitioner's lack of [actual] notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

14

*Cook v. Comm'r of Social Security*, 480 F.3d 432, 437 (6th Cir.2007) (alteration in original) (quoting *Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir.2001)).

Plaintiff did not address any of the *Cook* factors in her request.  Regardless, the Court concludes Plaintiff is not entitled to equitable tolling.  The State of Michigan tolled its statutes of limitations for 102 days at the beginning of the COVID-19 Pandemic and returned to calculating them normally on June 20, 2020. *See* Mich. Exec. Order 2020-122 (ending tolling of statutes of limitations for COVID-19 Pandemic effective June 20, 2020); *see also* Mich. Sup. Ct. Admin. Order Nos. 2020-3 (delaying deadlines for starting a civil case in trial courts starting March 10, 2020), 2020-18 (rescinding Administrative Order No. 2020-3 effective June 20, 2020).  Moreover, the Eastern District of Michigan, where Plaintiff filed her complaint, suspended court operations for less than a month at the beginning of the Pandemic; even then, the disruption was to in-person proceedings, not the filing of complaints.  *See* E.D. Mich. 20-AO-021 (postponing all grand jury proceedings as well as all civil and criminal matters scheduled for in-court appearances, other than criminal matters before magistrate judges, effective March 13, 2020), 20-AO-025 (authorizing the use of video and telephone conferencing on March 30, 2020).

Plaintiff was not terminated until March 9, 2021, well after Michigan's statutes of limitations began being calculated normally and well after this District

15

resumed court proceedings through video and teleconferencing.  Additionally, other plaintiffs have successfully filed timely WPA claims in this District since the COVID-19 Pandemic began.       *See, e.g.*, *Dorchy v. Fifth Third Bank*, 2022 WL 987177, at *1 (E.D. Mich. Mar. 31, 2022) (defendant terminated plaintiff's employment in October 2020, and plaintiff filed WPA claim in January 2021); *Struckel v. Macomb Cty.*, 2021 WL 4034263, at *3 (E.D. Mich. Sept. 3, 2021) (defendant terminated plaintiff's employment on September 21, 2020, and plaintiff filed WPA claim on November 6, 2020).  Plaintiff's situation is thus far from "exceptional."  *See Gibson*, 289 F.3d at 947–48.

Plaintiff also asserts that she had to wait to file her WPA claim until she received her Right to Sue Letter from the EEOC.  ECF No. 12, PageID.286.  Plaintiff contends she had to pursue all her claims at once or else her discrimination claims would have been collaterally estopped.  *Id*.  However, other courts in this District have already rejected this argument.  *See, e.g.*, *Moralez v. McDonalds-Stejoca Inc.*, No. 20-13023, 2022 WL 543002, at *6 (E.D. Mich. Feb. 23, 2022) (holding that the Right to Sue letter "from the EEOC did not waive the WPA's state law statutory limitations period").  Thus, Plaintiff has again failed to demonstrate "exceptional circumstances," let alone that her untimely filing was not her fault.  *Gibson*, 289 F.3d 943, 947–48 (6th Cir. 2002).  Accordingly, the Court declines to find that the

16

WPA's statute of limitations was equitably tolled by either the COVID-19 Pandemic or Plaintiff's desire to wait to file her claim until she received her Right to Sue letter from the EEOC.  Count I will be dismissed.

### 3. The Court will partially dismiss Plaintiff's ELCRA claim (Count II).

#### i. Plaintiff did not need to comply with the notice requirements of Michigan's Court of Claims Act to bring her ELCRA claim against UM.

Next, Defendants argue Plaintiff cannot maintain an ELCRA claim against UM because she failed to comply with the notice requirements of Michigan's Court of Claims Act (COCA).  ECF No. 6, PageID.212–13.  Plaintiff counters that she need not comply with the notice requirements in MCL 600.6431(1) because she brought her suit in a forum other than the Court of Claims.  ECF No. 12, PageID.287.

Pursuant to the COCA,

> a claim may not be maintained against [the State of Michigan] unless the claimant, within 1 year after the claim has accrued, files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against this state or any of its departments, commissions, boards, institutions, arms, or agencies.

MCL 600.6431(1).  However, in *Tyrrell v. Univ of Michigan*, the Michigan Court of Appeals determined "that compliance with MCL 600.6431(1) both (1) does not implicate governmental immunity absent the Legislature conditioning its consent to

17

be sued on compliance with the COCA and (2) is only necessary for claims proceeding in the Court of Claims." 335 Mich. App. 254, 257 966 N.W. 2d 219, 221 (2020), *appeal dismissed,* 507 Mich. 990, 959 N.W.2d 719 (Mich. 2021). In reaching these conclusions, the *Tyrell* Court noted, "The Legislature can[] . . . abrogate[] the state's sovereign immunity by enacting legislation consenting to suit." *Id.* 335 Mich. App. at 261, 966 N.W.2d at 223 (quoting *Progress Michigan v. Att'y Gen. (Progress II)*, 506 Mich. 74, 87, 954 N.W.2d 475, 480 (2020)). The *Tyrrell* Court also compared the statute at issue with one where the Legislature "expressly incorporate[d] MCL 600.6431." *Id.* 335 Mich. App. at 263, 966 N.W.2d at 224 (citation omitted).

Here, the Michigan Legislature expressly consented to suit under the ELCRA, *Doe v. Dep't of Transp.*, 324 Mich. App. 226, 237, 919 N.W.2d 670, 675 (2018), but it did not condition that consent on compliance with MCL 600.6431, *see Christie v. Wayne State Univ.*, No. 350321, 2021 WL 297452, at *4 (Mich. Ct. App. Jan. 28, 2021).[2] *Tyrell* thus precludes Defendants' argument. At the hearing on the Motion,

---

[2] *Fairley v. Dep't of Corr.*, on which Defendants rely, is distinguishable because, unlike the ELCRA, the statute at issue "expressly incorporate[d] MCL 600.6431." 497 Mich. 290, 297, 871 N.W.2d 129, 133 (2015); *see also Tyrrell*, 335 Mich. App. at 263, 966 N.W.2d at 224 ("[T]he Fairley Court explained that the plaintiffs' failure to comply with MCL 600.6431 implicated governmental immunity because the Legislature consented to suit under the [Government Tort Liability Act] only if the plaintiffs complied with MCL 600.6431.").

18

Defendants asserted that *Tyrell* was wrongly decided because the language of the COCA is clear that it should apply to all actions brought against arms of the State of Michigan. Regardless, Defendants maintained, *Tyrell* is not binding on this court and the Court should decline to follow it on policy grounds.[3]

The Court recognizes that the Michigan Supreme Court has ordered briefing on whether claims filed in the circuit court are subject to COCA's notice requirements in *Christie v. Wayne State Univ.*, 967 N.W.2d 379 (Mem) (Dec. 22, 2021) (citing *Tyrell*). Nevertheless, every other case that has addressed this issue since *Tyrell* was decided has adopted the *Tyrell* Court's reasoning. *See, e.g.*, *Deitert v. Univ. of Michigan Bd. of Regents*, No. 349059, 2021 WL 3817688, at *1 (Mich. Ct. App. Aug. 26, 2021), *appeal held in abeyance,* 969 N.W.2d 39 (Mich. 2022) (noting *Tyrell* "has withstood the *Tyrell* defendants' challenges by way of motion for reconsideration . . . and, more recently, the *Tyrell* defendants' delayed application for appeal before the Michigan Supreme Court" and finding the case "outcome determinative"); *Zarza v. Univ. of Michigan Bd. of Regents*, No. 352926,

---

[3] Defendants also seemed to argue that the Court of Claims should have exclusive jurisdiction over ELCRA claims against state actors because plaintiffs are not entitled to jury trials against the state in such actions. However, the Michigan Court of Appeals already rejected this exact argument in *Doe v. Dep't of Transportation*. 324 Mich. App. at 238, 919 N.W.2d at 677 ("[B]ecause plaintiff was entitled to a jury trial against defendant in her action under the ELCRA, the Court of Claims had concurrent jurisdiction with the circuit court . . . .").

19

2021 WL 2181418, at *2 (Mich. Ct. App. May 27, 2021) (reversing because "the foundational premise of the circuit court's ruling was erroneous pursuant to *Tyrrell*"); *Christie*, 2021 WL 297452, at *4 ("Given the conclusions in *Tyrrell* and its clear and direct application to the matter before this Court, defendant here was not entitled to governmental immunity from suit based on the claim that plaintiff failed to comply with MCL 600.6431.").

"In applying state law, [federal courts] anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court. Intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *Meyers v. Cincinnati Bd. of Educ.*, 983 F.3d 873, 880 (6th Cir. 2020). Given that the Michigan Supreme Court has not yet ruled on this issue and the uniformity among the Michigan appellate courts, this Court will not deviate from *Tyrrell*. Accordingly, Defendants University of Michigan and U-M Work Connections are not entitled to dismissal of Count II based on Plaintiff's failure to comply with MCL 600.6431.

      ii.    **Plaintiff fails to state an ELCRA claim (Count II) against Defendants Grier, and Coleman.**

Next, Defendants contend that Plaintiff "alleges no *factual* allegations" against Defendants Grier and Coleman and thus cannot satisfy the pleading

20

requirements of *Twombly and Iqbal*.  ECF No. 6, PageID.214 (emphasis in original).

Plaintiff seems to conflate several disparate counterarguments in her response.  She

first appears to argue that Defendant Grier's liability stems from her failure to

intervene in her role as a Senior HR representative to address Plaintiff's

discrimination complaints and that Defendant Coleman's liability stems from

negligent hiring and failure to intervene in her role as the University president.  ECF

No. 12, PageID.288.  Next, Plaintiff asserts that she "was required to name Grier and

Coleman as the 'officials acting on behalf of the state'" to qualify for the *Ex Parte

Young* exception to sovereign immunity.  Finally, Plaintiff also seems to argue that

Defendant University of Michigan (and thus Defendants Grier and Coleman as its

employees) is not truly a state actor because it has a privately funded endowment in

violation of the Privileges and Immunities Clause and is therefore not entitled to

sovereign immunity.  *Id*.

   As a preliminary matter, it is well settled that the University of Michigan is

an arm of the State of Michigan for purposes of Eleventh Amendment immunity.

*Kreipke v. Wayne State Univ.*, 807 F.3d 768, 775 (6th Cir. 2015); *see also Est. of

Ritter by Ritter v. Univ. of Michigan*, 851 F.2d 846, 849–51 (6th Cir. 1988).

However, Plaintiff misunderstands Defendants' arguments as Defendants did not

raise an Eleventh Amendment immunity defense to Plaintiff's ELCRA claim.  *See*

21

ECF No. 6, PageID.213 n.10.  Plaintiff's attempt to satisfy the *Ex Parte Young*

exception is thus unnecessary as it relates to this claim.

Nevertheless, Plaintiff has failed to state an ELCRA claim against Defendants

Grier and Coleman.  Plaintiff is bringing a hostile work environment and, possibly,

an unlabeled retaliation claim under the ELCRA.  *See* ECF No. 2, PageID.17–19.

First, to plead an ELCRA hostile work environment claim, a plaintiff must allege

that

> (1) the employee belonged to a protected group; (2) the employee was
> subjected to communication or conduct on the basis of the protected
> status; (3) the employee was subjected to unwelcome conduct or
> communication on the basis of the protected status; (4) the unwelcome
> conduct or communication was intended to, or in fact did, interfere
> substantially with the employee's employment or created an
> intimidating, hostile, or offensive work environment; and (5)
> respondeat superior.

*Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 468 (6th Cir. 2009) (quoting *Downey*

*v. Charlevoix Cnty. Bd. Road Commis.*, 227 Mich. App. 621, 576 N.W.2d 712, 716

(1998)).  To show respondeat superior, a plaintiff must allege "that his or her

employer had either actual or constrictive notice of the hostile work environment."

*Id.* at 470.  Alternatively, "a supervisor—as an 'agent' of an employer—may be

individually liable for violating the ELCRA."  *Dumas v. Hurley Med. Ctr.*, 837 F.

Supp. 2d 655, 664 (E.D. Mich. 2011) (citing *Elezovic v. Ford Motor Co.*, 472 Mich.

22

408, 426, 697 N.W.2d 851, 861 (2005)). To plead retaliation under the ELCRA, a plaintiff must allege that "(1) she engaged in protected activity, (2) the defendant was aware of the protected activity, (3) the defendant took an action that was materially adverse' to the plaintiff, and (4) there is a causal connection between the plaintiff's protected activity and the defendant's adverse action." *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 343–44 (6th Cir. 2021) (quotation marks omitted).

Here, the only allegation in the Amended Complaint about these Defendants is that each is "a natural person domiciled in the state of Michigan and employee of Defendant" University of Michigan. ECF No. 2, PageID.12. At the hearing on the Motion, Plaintiff argued that she needed discovery to be able to establish the factual basis for her claim. This directly contradicts Federal Rule of Civil Procedure 8(a) and the Supreme Court's holdings in *Twombly* and *Iqbal*. Fed. R. Civ. P. 8(a)(2) (stating that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief"); *Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." (cleaned up)); *Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter,

23

accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citation and quotation marks omitted)).  Because Plaintiff has not alleged any facts with respect to Defendants Grier and Coleman at all, she has necessarily failed to state an ELCRA claim against them.   Accordingly, Count II will be dismissed with respect to these Defendants.

### 4. The Court will dismiss Plaintiff's ADA and FMLA claims (Counts III and IV, respectively).

### iii. Plaintiff's ADA and FMLA claims against UM are precluded by the Eleventh Amendment.

Next, Defendants argue that the Eleventh Amendment bars Plaintiff's FMLA and ADA claims for damages against UM.   ECF No. 6, PageID.214–16.   In opposition, Plaintiff contends that "her ADA and FMLA claims must survive under the Due Process Clause of the Fourteenth Amendment."  ECF No. 12, PageID.288. Relying on *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976), Plaintiff maintains that state sovereignty is limited by the enforcement provisions of § 5 of the Fourteenth Amendment. *Id.* at PageID.289–90.  Specifically, Plaintiff asserts that if Defendants are state actors, she was entitled to greater due process protections before her

24

termination under the Government Employee Rights Act of 1991.[4]  *Id.* at PageID.289.  She also argues that immunity is limited "when a state actor's conduct is outside the scope of immunity protection" and that Defendants acted outside the scope of their employment.  *Id.* at PageID.288–89.

"A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense." *Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30, 35 (2012) (citing *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72–73 (2000); *Alden v. Maine*, 527 U.S. 706, (1999)).  Additionally, "Congress may abrogate the States' immunity from suit pursuant to its powers under § 5 of the Fourteenth Amendment." *Id.* (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976)).  However, legislation enacted pursuant to § 5 of the Fourteenth Amendment that "reach[es] beyond the scope" of the "actual guarantees" of § 1 of the Fourteenth Amendment, must exhibit 'congruence and proportionality between the injury to be prevented or remedied and the means

---

[4] To the extent Plaintiff now seeks to allege a Fourteenth Amendment Due Process claim or a claim under the Government Employee Rights Act of 1991, the response to a motion to dismiss is not the proper forum for doing so.  *Faber v. Smith*, No. 17-2523, 2018 WL 6918704, at *2 (6th Cir. June 6, 2018) ("A plaintiff cannot raise new legal claims in response to a dispositive motion filed by the defendant." (citing *Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. App'x 659, 666 (6th Cir. 2012)).

adopted to that end." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 365 (2001).

As such, although Congress attempted to abrogate the States' immunity from suits for damages by enacting the FMLA's self-care provision, the Supreme Court determined Congress had not identified a pattern of constitutional violations that justified abrogating the States' immunity. *Coleman*, 566 U.S. at 43–44. Therefore, "suits against States under this provision are barred by the States' immunity as sovereigns in our federal system." *Id.* at 33. Likewise, the Supreme Court determined there was not a pattern of constitutional violations to support suits against States for money damages under Title I of the ADA. *Garrett*, 531 U.S. at 374 (2001). The Court thus determined that such suits are barred by the Eleventh Amendment. *Id.*

As stated in Section III.B.3.ii *supra*, it is well-settled in the Sixth Circuit that the University of Michigan is an arm of the State of Michigan for purposes of Eleventh Amendment immunity. *Kreipke*, 807 F.3d at 775; *see also Ritter*, 851 F.2d at 849–51. Therefore, Plaintiff's FMLA and ADA claims for damages against Defendant University of Michigan and Defendant U-M Work Connections (as an organization owned and operated by the University) are barred.

26

Plaintiff counters that her prayer for relief requests "such other and further relief as the Court deems just and proper" and implicitly argues that she is entitled to the exception to sovereign immunity described in *Ex Parte Young*, 209 U.S. 123 (1908), which permits private individuals to sue state officials acting in their official capacities for prospective injunctive relief to end continuing violations of federal law. *See* ECF No. 12, PageID.290. Specifically, Plaintiff argues that, based on her catch-all request, the Court has discretion to award her

> injunctive relief[,] such as[] Ms. Williams['] reinstatement of her employment, retirement benefits, continued coverage under FMLA, back pay, reasonable attorney's fees, requir[ing] the University and Defendants to adopt and enact effective ADA accommodation policies and procedures, or the removal of negative reports from Ms. Williams employment file and to refrain from disparagement.

*Id*.

As a preliminary matter, many of the forms of relief Plaintiff lists are still monetary and therefore barred by the Eleventh Amendment. *See e.g.*, *Freeman v. Mich. Dep't of State*, 808 F.2d 1174, 1179 (6th Cir. 1987) (holding "back pay, front pay and fringe benefits" are all "barred by Eleventh Amendment . . . since any payment of these claims would come from the state treasury"). Regardless, Plaintiff did not include any of these requested forms of relief in her Amended Complaint. *See generally* ECF No. 2. She only requested damages, and her last-minute

27

recharacterization of her pleading cannot cure the deficiency. *See Cope v. Jefferson Cnty. Prob./Parole Off.*, No. 3:15-CV-P255-TBR, 2015 WL 4450834, at *2 (W.D. Ky. July 20, 2015) ("Because the complaint does not specify any particular prospective injunctive or declaratory relief nor is the nature of any such relief otherwise apparent on the face of the complaint, the Court finds that the *Ex parte Young* exception does not apply." (citation omitted)); *Taylor v. City of Akron, Summit Cnty.*, No. 5:13CV1635, 2013 WL 5503073, at *4 n.8 (N.D. Ohio Oct. 3, 2013) ("While the complaint does state generally that plaintiff seeks '[a]ppropriate declaratory and other injunctive and/or equitable relief[,]' . . . it does not specify any particular prospective injunctive or declaratory relief, nor is the nature of any such relief otherwise apparent on the face of the complaint.  Rather, with respect to plaintiff's civil rights claims, he seeks only compensatory damages and, therefore, the *Ex parte Young* exception does not apply.").  Accordingly, Plaintiff's ADA and FMLA claims against Defendants University of Michigan and U-M Work Connections must be dismissed.

### iv.  The ADA and FMLA do not provide for individual liability.

Defendants also maintain that neither the ADA nor the FMLA provide for individual liability.  ECF No. 6, PageID.216.  Specifically, they contend that individual supervisors cannot be held personally liable under the ADA, and none of

28

the Individual Defendants qualify as an "employer" under the statute.  *Id.* at PageID.217.  Additionally, Defendants assert that, "the Sixth Circuit does not permit individual liability under the FMLA against public agency employers."  *Id*.

Plaintiff does not directly respond to these arguments.  *See generally* ECF No. 12, PageID.288–90.  Regardless, Defendants are correct.  "Individual supervisors who do not independently qualify under the statutory definition of employers may not be held personally liable in ADA cases."  *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 808 n.1 (6th Cir. 1999) (affirming district court's dismissal of claims against superintendent in his personal capacity).

"The ADA defines an 'employer' as 'a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person,' with limited exceptions.  *Hawthorne-Burdine v. Oakland Univ.*, 158 F. Supp. 3d 586, 601 (E.D. Mich. 2016).  Here, Plaintiff has not alleged that any of the Individual Defendants independently qualifies as an "employer" under the ADA. Nor could she, given the precedent against such an argument.  *See, e.g.*, *Gong v. Univ. of Michigan*, No. 19-1068, 2019 WL 7598905, at *2 (6th Cir. Oct. 17, 2019) (affirming district court's dismissal of claims against individual defendants, who were University of Michigan employees, "because individual employees or

29

supervisors cannot be held personally liable under . . . the ADA"). Thus, Plaintiff's ADA claims against the Individual Defendants must be dismissed. *See Primm v. Dep't of Hum. Servs.*, No. 16-6837, 2017 WL 10646487, at *4 (6th Cir. Aug. 17, 2017) ("[T]he district court correctly noted that even if [plaintiff] had stated . . . ADA claims, it would be necessary to dismiss [her manager and supervisor] as defendants because an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under . . . the ADA[.]" (citation and quotation marks omitted)).

Similarly, "[i]t is well established under Sixth Circuit law that '[the FMLA] does not impose individual liability on public agency employers.'" *Anderson v. Detroit Transportation Corp.*, 435 F. Supp. 3d 783, 801 (E.D. Mich. 2020) (alteration in original) (quoting *Mitchell v. Chapman*, 343 F.3d 811, 829 (6th Cir. 2003)); *see also Crugher v. Prelesnik*, 761 F.3d 610, 616 (6th Cir. 2014) ("[The FMLA] precludes suits against state officials in their individual capacities."); *Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956, 961 (6th Cir. 2013) ("[The Sixth] Circuit has held that public employers cannot be held individually liable under the FMLA."). Thus, Plaintiff's FMLA claims against the Individual Defendants must also be dismissed.

30

### 5. Plaintiff's Title VII and ADEA claims (Counts V and VI, respectively) are unexhausted and time-barred.

Defendants argue Plaintiff's Title VII and ADEA claims are time-barred due to her failure to timely exhaust her administrative remedies as both claims can only be pursued in federal court after filing a Charge of Discrimination with the EEOC. ECF No. 6, PageID.218.   Specifically, Defendants argue that Plaintiff's EEOC charge does allege race or age discrimination, and the limitations period for filing an amended charge has passed.  *Id.* at PageID.219–20.  Plaintiff counters that neither "the statute nor the . . . caselaw require that only the claims charged in the EEOC complaint can be raised in a subsequent lawsuit once the Right to Sue letter has been issued."  ECF No. 12, PageID.290.  Plaintiff emphasizes that EEOC charges filed by unrepresented complainants are to be liberally construed and that the EEOC charge form does not expressly state that complainants are limited to lawsuits based on the claims selected in the form.  *Id.* at PageID.291.

To exhaust her administrative remedies, a plaintiff must "(1) timely file a charge of employment discrimination with the EEOC; and (2) receive and act upon the EEOC's statutory notice of the right to sue ('right-to-sue letter')."  *Granderson v. Univ. of Michigan*, 211 F. App'x 398, 400 (6th Cir. 2006) (discussing prerequisites that must be satisfied prior to filing a Title VII claim in federal court); *see also Spengler v. Worthington Cylinders*, 615 F.3d 481, 489 (6th Cir. 2010) (stating that

31

"a plaintiff must file a charge with the EEOC before filing a complaint alleging age discrimination in federal court" (citation and quotation marks omitted)).

Here, Plaintiff's characterization of the law is incorrect. "The [EEOC] charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (quoting 29 C.F.R. § 1601.12(b)). As such, a plaintiff alleging employment discrimination generally cannot bring claims in a federal lawsuit that were not included in her EEOC charge. *Id*. Plaintiff is correct that EEOC charges filed by unrepresented complainants "are construed liberally;" however, that is "'so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge.'" *Barrow v. City of Cleveland*, 773 F. App'x 254, 260 (6th Cir. 2019) (quoting *Younis*, 610 F.3d at 362). "[T]he general rule in this circuit [is] that the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Id.* (alterations in original) (quoting *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004). In other words, the plaintiff can pursue an "uncharged claim" in federal court" if the "facts related . . . to the charged claim would [have] prompt[ed] the EEOC to investigate" the uncharged claim. *Golden v. Mirabile Inv. Corp.*, 724 F.

32

App'x 441, 445 (6th Cir. 2018) (quoting *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998)).

It is undisputed that Plaintiff only checked the box for disability discrimination on her EEOC charge.  ECF No. 2-1, PageID.29.  At the hearing on the Motion, she argued that the EEOC would have investigated her uncharged race and age discrimination claims based on the narrative included in her charge.  The Court disagrees.   Plaintiff's narrative makes no mention of race or age discrimination.   Instead, she exclusively discusses her disability and Defendants alleged failure to provide her a reasonable accommodation despite her medical documentation.  *Id*.  Nothing in Plaintiff's charge "would prompt the EEOC to investigate" her uncharged race and age discrimination claims.  *Golden*, 724 F. App'x at 445.  "For this Court to find otherwise would undermine the standard set by *Younis* and permit any generic one-issue EEOC claim to cover all other forms of discrimination in the workplace." *Id*.  The Court thus concludes Plaintiff's Title VII and ADEA claims are unexhausted.

"[U]nder Title VII, an employee bringing a claim has 180 (or 300) days after an adverse employment action to file a charge with the EEOC." *Thompson v. Fresh Prod., LLC*, 985 F.3d 509, 520 (6th Cir. 2021) (citing 42 U.S.C. § 2000e–5(e)(1)). "If the plaintiff resides in a state that is a 'deferral jurisdiction,' meaning the

jurisdiction has a law prohibiting the alleged misconduct and an agency capable of granting or seeking relief from the conduct, she has 300 days to file a charge." *Id.* at 520 n.4. Michigan is a deferral jurisdiction. Likewise, "[i]n a state like Michigan that 'has a law prohibiting discrimination in employment because of age,' the EEOC charge for a federal claim 'shall be filed . . . within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.'" *Loffredo v. Daimler AG*, 666 F. App'x 370, 377 (6th Cir. 2016) (quoting 29 U.S.C. §§ 626(d)(1), 633(b)). Therefore, Plaintiff is well outside the applicable limitations period for her Title VII and ADEA claims. Accordingly, the Court finds that Counts V and VI are time-barred and must be dismissed.

## IV.   CONCLUSION

Accordingly, for the reasons articulated above, **IT IS HEREBY ORDERED** that Defendants' Motion to Partially Dismiss Plaintiff's First Amended Complaint (ECF No 6) is **GRANTED IN PART AND DENIED IN PART**. Specifically, (1) Counts I, III, IV, V, and VI are dismissed in their entirety, (2) Count II is dismissed with respect to Defendants Grier and Coleman, and (3) Plaintiff's ELCRA claim (Count II) against Defendants University of Michigan, U-M Work Connections, Barnett, Fergus, and Atkins remains.

34

**IT IS FURTHER ORDERED** that the following dates and instructions shall govern this matter:

| | |
|---|---|
| Answer due: | November 21, 2022 |
| Initial Disclosures submitted by: | December 5, 2022 |
| Amendments to the Pleadings filed by: | December 5, 2022 |
| Witness Lists filed by: | May 8, 2022 |
| Discovery cutoff: | May 22, 2023 |
| Dispositive Motions due: | June 22, 2023 |
| Case Evaluation (without sanctions, unless the parties so stipulate):[5] | July 2023 |
| Settlement Conference before the Magistrate Judge: | August 2023 |
| Final Pretrial Order due: | September 4, 2023 |
| Motions *in Limine* due: | September 4, 2023 |
| Final Pretrial Conference: | September 18, 2023 at 2:00 p.m. |
| Trial Date: | October 3, 2023 |

I.  **TIME**.  Computation of time under this order and under any notice of any scheduling order or notice in this case shall be in conformity and accordance with Federal Rule of Civil Procedure 6(a).

---

[5]  The parties may submit the case to facilitation in lieu of case evaluation.  A proposed stipulated order referring the case to facilitation shall be submitted to the Court via utilities function on CM/ECF by no later than May 8, 2023. **The proposed order must identify the name of facilitator and the date of the facilitation.** Facilitation must occur no later than July 31, 2023.

35

II.  **DISCOVERY**.  The Court will not order discovery to take place subsequent to the discovery cutoff date.  The discovery deadline may be extended by filing a stipulation with the Court only if the extension of time does not affect the motion cutoff, final pretrial conference, or trial dates.  Extensions or adjournments of all other dates will only be considered upon the filing of a timely written motion for good cause shown.  Local Rule 26.2 generally prohibits filing discovery materials with the Clerk.  Violation of this rule may result in sanctions.

III.  **WITNESSES**.  The deadline for exchange of witness lists refers to all witnesses, lay and expert.

IV.  **MOTIONS**.  The Court requires strict compliance with Local Rule 7.1(a), which requires moving parties to seek concurrence before filing a motion. Dispositive motions shall be filed on or before the date set forth in this order. No party may file more than one motion for summary judgment without obtaining leave of court.  All briefs must comply with Local Rules 5.1 and 7.1, and must contain citation to appropriate authorities within the text of the brief, and citations must conform to the latest edition of The Bluebook: A Uniform System of Citation published by the Harvard Law Review.  Courtesy copies of motions and briefs must be provided to chambers and in accordance with Local Rule 5.1.1(c).  Courtesy copies must be properly bound.  The Court will not accept documents loosely secured with a rubber band or binder clip.

V.  **STIPULATION FOR CASE EVALUATION** must be submitted by the date set forth in this order.  Referral to mediation panel will be made following receipt of the stipulation.

VI.  **FINAL PRETRIAL CONFERENCE AND FINAL PRETRIAL ORDER**. The Final Pretrial Order must be submitted through the document utilities function of the CM/ECF on or before the date set by this order.  All witnesses must be listed in the Final Pretrial Order.  Witnesses may only be added to the

36

Final Pretrial Order by stipulation of the parties and leave of court.   Counsel shall follow the procedure outlined below to prepare for the final pretrial conference and the Final Pretrial Order:

A. Counsel for all parties are directed to confer in person (face to face) at their earliest convenience in order to (1) reach any possible stipulations narrowing the issues of law and fact, (2) deal with non-stipulated issues in the manner stated in this paragraph, and (3) exchange documents that will be offered in evidence at trial.  It shall be the duty of counsel for plaintiff to initiate that meeting and the duty of opposing counsel to respond to plaintiff's counsel and to offer full cooperation and assistance.  If, after reasonable effort, any party cannot obtain the cooperation of opposing counsel, it shall be his or her duty to communicate with the court.  The Final Pretrial Order shall fulfill the parties' disclosure obligations under Federal Rule of Civil Procedure 26(a)(3), unless the Judge orders otherwise.  All objections specified in Rule 26(a)(3) shall be made in this order. Counsel for plaintiff shall prepare a draft Final Pretrial Order and submit it to opposing counsel, after which all counsel will jointly submit the proposed order.  The Final Pretrial Order should provide for the signature of the court, which, when signed, will become an Order of the court.  The proposed Final Pretrial Order shall strictly comply with the requirements of Local Rule 16.2.

**\* Pursuant to Local Rule 16.2(b)(9), any objection based on foundation or authenticity will be deemed waived if not raised before trial.**

B. The following persons shall personally attend the final pretrial conference:

1) Trial counsel for each party;
2) All parties who are natural persons;

37

3) A representative on behalf of any other party;

4) A representative of any insurance carrier that has undertaken the prosecution or defense of the case and has contractually reserved to itself the ability to settle the action.

Representatives must possess full authority to engage in settlement discussions and to agree upon a full and final settlement. "Personal attendance" by each party is not satisfied by (1) trial counsel professing to have full authority on behalf of the client or (2) a party being available by telephone.

VII.  <u>At least ONE WEEK</u> prior to the beginning of trial, counsel shall furnish to the court the following:

A. In jury cases, any requests for <u>VOIR DIRE</u>, proposed <u>JOINT JURY INSTRUCTIONS</u> and the <u>VERDICT FORM</u>. The parties shall file with the court a single set of proposed, stipulated jury instructions and a single, proposed verdict form. The instructions are to be typewritten and double spaced and shall contain references to authority (e.g., "Devitt and Blackmar, Section 11.08"). Additionally, each party shall separately file any additional proposed instructions to which any other party objects. The parties must make a concerted, good faith effort to narrow the areas of dispute and to discuss each instruction with a view to reaching an agreement as to an acceptable form.

B. In a non-jury case, proposed <u>FINDINGS OF FACT</u> and <u>CONCLUSIONS OF LAW.</u>

C. A statement of claims or defenses, no longer than two pages, suitable to be read to the jury during opening instructions.

VII.  **EXHIBITS**. Counsel are required to mark all proposed exhibits in advance of trial. Plaintiff's exhibits shall use numbers and Defendant's exhibits shall

38

use letters.  A consecutive number and lettering system should be used by each party.  The parties are required to exchange marked exhibits three days prior to the start of trial.  Counsel are also required to maintain a record of all admitted exhibits during trial.  See attached exhibit form.  Counsel for each party must keep custody of that party's admitted exhibits during trial.  A party who objects to this provision must file a written objection prior to jury selection.

VIII.  **JUDGE'S COPIES.**  A paper copy of electronically filed motions, briefs, attachments, responses, replies, proposed Final Pretrial Order, and proposed Joint Jury Instructions (with disc) MUST be delivered directly to the Judge's chambers and labeled Judge's copy.

IX.  The Court will not allow counsel not admitted in the Eastern District to practice upon a special motion.  All inquiries regarding admission to this district must be directed to the Clerk's office at (313) 234-5005.

X.  **LOCAL COUNSEL.**  An attorney admitted to practice in the Eastern District of Michigan who appears as attorney of record and is not an active member of the State Bar of Michigan must specify local counsel with an office in this district.  Local counsel must enter an appearance and otherwise comply with Local Rule 83.20(f).

**IT IS SO ORDERED**.

/s/ Gershwin Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  November 8, 2022
39

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 8, 2022, by electronic and/or ordinary mail.
<u>/s/ Teresa McGovern</u>
Case Manager